D. M. Meyer, appellant, v. W. R. Linch and Clyde A.
Linch, partners doing business under the firm name
and style of Linch Bros., appellees.

15 N. W. 2d 317

Filed July 7, 1944.   No. 31807.

(1)

*McKillip, Barth & Blevens* and *Matzke & Bek,* for appellant.

*Chambers, Holland & Locke, Beghtol & Rankin* and *H. L. Norval, contra.*

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

SIMMONS, C. J.

This is an action to recover judgment on a promissory note. At the close of plaintiff's case in chief, the trial court dismissed the action as to the defendant, Clyde A. Linch. Plaintiff appeals from that decision. The appeal presents the question as to whether or not the trial court erred in sustaining objections of the defendant, Clyde A. Linch, to offers of proof made by the plaintiff. We affirm the judgment of the trial court.

The petition herein was filed June 16, 1942. Plaintiff in the caption of his petition named the defendants as "W. R. Linch and Clyde A. Linch, partners doing business under the firm name and style of Linch Brothers." In the body of the petition, plaintiff alleged that on or about April 2, 1934, "the defendants, W. R. Linch and Clyde A. Linch, partners doing business under the firm name and style of Linch Brothers, for a valuable consideration" made and delivered to plaintiff their promissory note for $4,000, payable September 1, 1934, bearing 6 per cent interest; attached a copy of the note to the petition showing that it was signed "W. R. Linch" and "Clyde A. Linch"; alleged a payment of $12.70 on June 25, 1937; alleged the amount due and prayed for judgment "against the defendants."

The defendant, Clyde A. Linch, answered separately, denied generally and pleaded the bar of the statute of limita-

tions. By reply, plaintiff pleaded that defendants by reason of statements made and promises given were estopped to plead the bar of the statute.

The action went to trial, each defendant being represented by separate counsel. At the close of plaintiff's case in chief, the defendant, Clyde A. Linch, moved that the action be dismissed as to him for insufficiency of the evidence to sustain a judgment against him, and for the further reason that the evidence showed that the statute of limitations had run on the note as against him. The trial court sustained the motion and dismissed the action as to the defendant, Clyde A. Linch. From that order of dismissal, plaintiff appeals.

It appears from the plaintiff's evidence, which was admitted, that on or about April 2, 1934, the defendant, W. R. Linch, tendered to the plaintiff the note here involved, bearing only the signature of W. R. Linch. Plaintiff refused to accept it, and said: "there would have to be another signer." Defendant, W. R. Linch, said: "Alright I can get Clyde, my brother." Some two or three weeks later, the note was tendered to plaintiff with the signature of Clyde A. Linch thereon, and plaintiff accepted it. Thereafter, a short time prior to June 25, 1937, plaintiff bought some lightning rod wire from the defendant, W. R. Linch. Plaintiff returned unused wire on June 25 and inquired about the price of that which he had used. Defendant, W. R. Linch, figured the value of that used at $12.70 and directed that credit be placed on the note for that amount. Plaintiff thereafter on that day endorsed the payment on the note. Plaintiff further testified that at different times W. R. Linch admitted liability on the note, asked that suit be not brought, etc. Plaintiff testified that he did not know the defendant, Clyde A. Linch, and that Clyde A. Linch was not present at any of the conversations had with W. R. Linch.

Plaintiff, in his brief here, states the rule to be that a payment by one of two joint makers will not toll the statute against the other, unless the payment was made with his knowledge, consent and acquiescence; unless the one

making the payment was the agent of the other; or unless they were partners.

On the first proposition, his assignment of error is that the court erred in not receiving evidence that the endorsement was made on the note with the knowledge, consent and approval of Clyde A. Linch, and by him ratified and authorized. The evidence of plaintiff's witness was that when the defendant, W. R. Linch, had told plaintiff to put the amount of the wire "on the back of the note," that plaintiff asked "about the other signature," and W. R. Linch said "it was alright, he would agree to it." This was stricken as hearsay as to defendant, Clyde A. Linch. Clyde A. Linch was not present. Obviously the ruling was correct, and just as obviously the evidence, had it been received, would not have bound the defendant, Clyde A. Linch, either to the effect that the payment was made with his knowledge, or that he ratified and approved it. The rule is: "Partial payments made without the authority or consent of a surety or joint obligor do not toll the statute of limitations as to such surety or joint obligor." *Rawleigh Co. v. Smith,* 142 Neb. 529, 9 N. W. 2d 286.

Plaintiff next argues that where there is a partnership, there is an agency, and hence that his "problem was not to prove agency, but to prove that the defendants were partners. If they were partners, then the payment by one tolls the statute as to the other." To prove partnership, plaintiff made a series of offers of proof, to all of which the trial court sustained objections. Plaintiff's assignments of error go to the rejection of his own evidence upon which he made these separate offers of proof. It is plaintiff's contention that had the evidence been received, it would have shown that the liability of Clyde A. Linch was that of a partner of W. R. Linch and, accordingly, that the payment of W. R. Linch bound the defendant, Clyde A. Linch, and tolled the statute as to him. He further assigns as error the dismissal of the action as to Clyde A. Linch. The answer to the last assignment depends upon whether or not the court erred in excluding the proffered evidence.

The plaintiff in his brief here assumes the sufficiency of the offered evidence to establish the requisite partnership, and argues that the trial court refused the offers on the ground that the action was one against the defendants as individuals and for that he erred.

Defendant in his brief first submits that the trial court ruled properly on the offers on the ground that the preliminary foundation questions as to knowledge of the witness, etc., were not asked, and further contends that had the offered testimony been received, he would still be entitled to have the cause dismissed as to him. To meet the first contention, plaintiff moved here that the record be returned to the trial court and for a diminution of the record to show that preliminary to the trial, a conference was had in the judge's chambers between the court and counsel, wherein the court announced his opinion that evidence of partnership was not admissible under the pleadings. Plaintiff then advised that he would make an offer of proof and that "an arrangement was entered into by counsel whereby the offers of proof should be made in the absence of the jury and that it would not be necessary to place witnesses on the stand in the presence of the jury and ask the preliminary questions;" and that "the arrangement itself related to all the questions which were asked concerning the matter of co-partnership and as to the capacity in which the appellee, Clyde A. Linch, signed the instrument." We do not need to determine here the question of the right of an appellant, at this stage of the proceedings, to have the record amended in the manner indicated. We have examined each of the several offers made, and assuming, but not deciding, that evidence of partnership was admissible under the pleadings, and, disregarding the foundation question, find that the trial court did not err in his rulings thereon.

The offers of proof made were blanket offers, each reciting a series of statements. They will be summarized as made. Plaintiff's first offer of proof was that upon numerous and diverse occasions prior and subsequent to 1937, he discussed this note with defendant, W. R. Linch, when

plaintiff stated that W. R. Linch would either have to make payment or that plaintiff would sue; that W. R. Linch told him not to sue, and said: "I will pay it; I will never raise the statute of limitations against you"; that the plaintiff relied upon the statements and as a result did not file the action earlier, but in the absence of the statements would have done so. It is not claimed that this promise was in writing. The statute is: "In any cause founded on contract, when any part of the principal or interest shall have been voluntarily paid, or an acknowledgment of an existing liability, debt, or claim, or any promise to pay the same shall have been made in writing an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment, or promise." Comp. St. 1929, sec. 20-216. "Any promise to pay a debt or other existing liability in a cause founded on written contract, to prevent the running of the statute of limitations, must be in writing." *Brainard v. Hall*, 137 Neb. 491, 289 N. W. 845. It is obvious that the court did not err in sustaining an objection made on the above ground.

Plaintiff's second offer was to prove by plaintiff that prior to April 12, 1934, he had purchased from a bank a real estate mortgage on land in Deuel county; that shortly prior to April 2, *1942,* (sic) W. R. Linch, defendant, came to him and stated that he and his brother Clyde desired to acquire the mortgage; that they desired to use the proceeds in their business and that he would give plaintiff a note signed by W. R. Linch and Clyde Linch for $4,000, due September 1st after date; that the note was better security than what he already had; that the land was worth less than the note and mortgage which plaintiff held and, "relying upon that representation," W. R. Linch brought the plaintiff the note in suit, signed by W. R. Linch and Clyde A. Linch; and that upon delivery of the note plaintiff "made an assignment *to W. R. Linch* of his note and mortgage upon the real estate" mentioned. (Emphasis supplied.) To this the defendant, Clyde A. Linch, objected as incompetent, irrelevant and immaterial, and especially so as there was no issue as to

consideration, and hearsay as to him. The court sustained the objection.

Plaintiff then followed this ruling with the statement that the offer was not made for the purpose of explaining the consideration, but for the purpose of "proving that Clyde Linch and W. R. Linch received the consideration for this note and that the same was delivered to them and used by them in their business, for the purpose of supplying the foundation of partnership, whereby the subsequent payment made by Ray Linch upon this note would be applicable to Clyde Linch, and to show the relationship between the parties." This was objected to by Clyde Linch as "incompetent, irrelevant and immaterial; not within the pleadings and hearsay." The offer at most recited (assuming the date of 1942 to be erroneous) the inducements that W. R. Linch offered to secure an assignment to himself. The "purpose," as explained by counsel, was to show that the two defendants "received the consideration for this note." The declared purpose goes to matters not contained in the offer and contrary thereto. The offer itself showed that the assignment was made to W. R. Linch; there was nothing in the offer to show that W. R. Linch and Clyde Linch had a "business," or that the note secured by the mortgage was delivered to and used by them in their business. There was no reference to a partnership in the offer, nor offer to connect with evidence of a partnership. We see no error in the trial court's ruling.

Plaintiff next offered to prove that "contemporaneously, and as a part of this same transaction," there was one "by *W. R. Linch* with one John Sunderman" for a note and mortgage on this same land; and that W. R. Linch told plaintiff he was "making the same arrangement" with Sunderman; that "he was supplying Mr. Sunderman a note signed by himself and his brother, Clyde," and Sunderman was assigning "to him" his note and mortgage, and plaintiff stated that if Sunderman agreed to it, he was willing also. This offer was made for the "purpose of throwing light upon the relationship of the parties to this transaction."

Defendant, Clyde A. Linch, objected to the offer as incompetent, irrelevant and immaterial. The court sustained the objection. The offer merely was to show at most a part of the inducement that W. R. Linch offered to plaintiff, to the effect that in consideration of a note signed by himself and his brother Clyde, Sunderman was assigning a note and mortgage to *W. R. Linch* and plaintiff was "willing" to do the same thing. We see no error in the court's ruling.

Plaintiff then offered to prove that both mortgages were assigned to W. R. Linch, and "thereafter W. R. Linch had his brother Harry B. Linch negotiate" a federal farm mortgage on the real estate, and that the money realized from the new loan "was received by W. R. Linch and Clyde Linch." To this the defendant, Clyde A. Linch, objected "as incompetent, irrelevant and immaterial." It is an offer to prove that a third party negotiated a new loan on the Deuel county land, and that Clyde A. Linch and W. R. Linch received the money realized from the new loan. We see no error in the trial court's ruling.

Plaintiff next offered to prove that the money received from the new loan "which the defendants were able to make" by reason of the fact that "they had received an assignment" of the notes and mortgages of Meyer and Sunderman, was expended and used "in their partnership business, business of a joint nature, to the extent of $4407.20," and that W. R. Linch and Clyde A. Linch each received $409.65 in addition. To this the defendant, Clyde A. Linch, objected on the ground that the offer assumed a partnership relation, of which there was no proof, and that the offer did not in any way tend to establish the conclusions contained in the offer, and the purported facts stated in the offer were incompetent, irrelevant and immaterial. The trial court sustained the objection and.we think properly so. The previous offer was that the defendant, W. R. Linch, had a brother Harry negotiate the new loan. No evidence of a "partnership business" involving Clyde A. Linch had been received, and none offered.

Plaintiff then offered to prove that on the date of the

note here in suit, the defendant, W. R. Linch, and Clyde A. Linch were partners engaged in various joint ventures; that the proceeds of the note in suit "by way of the Federal Farm loan" were used in the partnership transactions; that the partnership received the benefit thereof; and that "the relationship is that of partnership, as well as joint makers." To this the defendant, Clyde A. Linch, objected as incompetent, irrelevant and immaterial, calling for a conclusion and speculative. The trial court sustained the objection, and we think properly so. Clearly, the latter part of the offer was a conclusion of law, about which the witness was not competent to testify. The offer as to facts merely went to show that when the note in suit was given, W. R. Linch and Clyde A. Linch were partners in various ventures and that the proceeds of the federal farm loan went to the use and benefit of the partnership. This latter matter will be discussed in connection with the next offer.

Plaintiff next offered to prove that "on the date the note was signed, and on the date when the endorsement was made that W. R. Linch and Clyde Linch were engaged in the business of operating real estate and lands," participating in the profits and losses; and on various occasions had stated openly and publicly that they were partners; "and that they operated lands and other investments together *in the name of W. R. Linch and Clyde Linch, co-partners. That they received the consideration arising out of this note as such partners.*" (Emphasis supplied.) The trial court sustained an objection to this offer, and we think properly so. This offer does not go to show that the note here in suit was a partnership obligation. In fact, the only inference possible from plaintiff's own testimony given on direct examination is that defendant, Clyde A. Linch, signed because plaintiff required two signatures. The offer does not purport to show that these two defendants owned the land upon which the federal farm mortgage was given, either individually or as partners. From the briefs we gather that it was owned by Harry B. Linch. The offer does not go to show that the plaintiff accepted the note in suit as a

partnership obligation. His own testimony, given on direct examination, negatives any such conclusion. The offer does not go to show that plaintiff knew of the partnership when he accepted the note, nor that he relied upon it in accepting the note. In fact, his second offer shows a reliance upon an entirely different representation. The offer does not go to show that in accepting the credit and endorsing the payment of $12.70 on the note, he was relying on the representation of partnership. The offer does not go to show, and it is not claimed, that the defendant, Clyde A. Linch, had any connection with the lightning rod transaction. The offer does not go to show that this note was given as any part of the partnership business. It was merely an offer to show that there was a partnership business conducted by these defendants, and that they held themselves out as partners. Neither does the offer go to show that plaintiff knew of the holding out of the defendants as partners. It does not even show that the holding out was made either at or before the time the note in suit was given, or at or before the time the payment was endorsed on the note. It merely states that "on various occasions both W. R. Linch and Clyde Linch stated openly and publicly that they were partners."

. The note in suit on its face was the individual obligation of the defendants. The presumption is that it was the individual contract of the defendants. This presumption is strengthened by the fact that plaintiff offered to prove that the defendants were partners operating lands and other investments "in the name of W. R. Linch and Clyde Linch, co-partners." To hold the defendant, Clyde A. Linch, liable as a partner, it is not sufficient to show that a partnership existed between the defendants. It must be further shown that the consideration of the note was advanced to the partnership, and the note accepted on the credit of the partnership. If the basis for holding the defendants liable as partners is that they held themselves out as such, then it was incumbent upon the plaintiff to show that he relied upon such holding out in accepting the note. *Blue Valley*

*State Bank v. Milburn,* 120 Neb. 421, 232 N. W. 777. Neither the final offer nor the offers as a whole are sufficient to hold the defendant as a partner. The last sentence of the offer is "That they received the consideration arising out of this note as such partners." It is noted that in the second offer of proof, plaintiff offered to show that W. R. Linch told him he and his brother, Clyde Linch, desired to acquire the mortgage and to use the proceeds in their business. That was followed, however, by an offer to prove that the note and mortgage were assigned to W. R. Linch; and, by a subsequent offer, that W. R. Linch had his brother, Harry B. Linch, negotiate the new loan, and that the money from the new loan "was received by W. R. Linch and Clyde Linch"; and, by a subsequent offer, that this money was "expended and used by W. R. and Clyde Linch in their partnership business" to the extent of $4,407.20; and, by a subsequent offer, "that the partnership received the benefit thereof." Conceding that the defendants, W. R. Linch and Clyde A. Linch, desired to secure the note and mortgage for use in their business, the offers of proof were that plaintiff, in consideration for the note in suit signed by the two individuals, assigned his note and mortgage to W. R. Linch, who, in turn, through refinancing by a third party, received money on it, which in turn was received by these two defendants, and they in turn expended and used it in their partnership business. The offer does not go to show that the note and mortgage on the Deuel county land was a partnership asset, nor that the money received from it was a partnership asset, but rather that it was the property of W. R. Linch and was by him turned to himself and brother Clyde and by them later "expended and used" in the partnership business. This evidence would go to show that W. R. Linch was the creditor of the partnership, but from that it does not follow that the note in suit, because of that transaction subsequent to the making and delivery, became a partnership obligation. We think the above is sustained by reason and the authorities. See 47 C. J., sec. 345, p. 872; 40 Am. Jur., sec. 149, p. 236, and cases there cited.

It necessarily follows that the payment by W. R. Linch does not toll the statute as to the defendant, Clyde A. Linch.

Under these circumstances, should the record be amended as asked by plaintiff, it would avail him nothing. The motion accordingly is overruled.

The judgment of the trial court is affirmed.

AFFIRMED.